## DAY v. THE MECHANICS' & TRADERS' INSURANCE COMPANY, *Appellant.*

1. **Insurance :** CHANGE OF POLICY BY PAROL. The terms of an open policy of insurance can be changed by a subsequent parol agreement between the contracting parties.

2. —— : ——. By the terms of an open policy of insurance, before an insurance of the property could be effected under it, an indorsement by the authorized agent of the insurer was required to be made either on the policy, or a book attached thereto, or the issuance of a certificate by an agent and signed by an officer of the company was necessary ; *held*, that after the delivery of the policy it could be so modified by parol by agreement of the parties as to enable the policy holder to effect his insurance on shipments of property by him, by notice directed to the company's agent and deposited in the mail.

3. —— : ——. The policy contained the following provision : "The use of general terms or anything less than a distinct, specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction herein contained ;" *held*, that said clause did not apply to and prohibit the modification of the terms of the policy above mentioned.

4. **Insurer :** ACTS OF AGENTS. The authority of the agents of the insurance company to consent to the modification of the terms of the policy may be inferred from the course of dealing with the insured and the recognition of these acts by the company.

*Appeal from Lafayette Circuit Court.*—HON. J. P. STROTHER, Judge,

AFFIRMED.

*McKeighan & Jones* for appellant.

(1) The court should have sustained appellant's objection to the witness, Winsor's, testimony, in regard to effecting insurance. The policy expressly provided that it should not be changed except "by a written

or printed agreement expressed and indorsed on the policy." Winsor, being a mere special agent of the company, could not change the policy in any other way, except as authorized by the policy itself, and not then unless specially authorized and the authority was shown. *Hale v. M. M. F. Co.*, 6 Gray, 169; *Abbot v. Gatch*, 13 Md. 314; *Worcester v. Hatfield, etc., Ins. Co.*, 11 Cush. 265; *Carpenter v. Prov. Ins. Co.*, 16 Pet.; *Walsh v. Hartford Fire Ins. Co.*, 73 N. Y. 5; *Ins. Co. v. Mowry*, 96 U. S. 544. (2) The court erred in permitting the agent to state what was necessary to be done to effect insurance, nor should it have allowed him to state how insurance was effected subsequent to the transaction in controversy. (3) There was no insurance of the shipment in controversy; the minds of the parties never met; the respondent prepared a proposal for insurance which was never received, much less accepted. (4) An open policy itself insures nothing and is not even a contract for any particular shipment; the contract takes effect on any shipment only after all the requirements of the original policy are complied with. Parsons Mar. Insur. 327. Under an open policy, the insurance is the subject of a special and distinct contract to be approved by the company and to be entered in the book attached to the policy. 2 Ins. L. J. No. 2. (5) Where the terms of a policy require an indorsement, it must be done or the company is not bound. *Phalto v. Ins. Co.*, 38 Mo. 248; *Edwards v. Ins. Co.*, 7 Mo. 382. (6) The evidence does not show any modification of the terms of the policy by the company's agent either authorized or unauthorized.

*Wallace & Chiles* and *John S. Blackwell* for respondent.

(1) There was no error in the court below in the admission of evidence on the part of the plaintiff. (2) There was no error in the court giving instructions numbered one, two, three, four and five, on the part of plaintiff.

Parties may by a subsequent parol agreement upon a sufficient consideration, change or modify the terms of a written contract. *Henning v. Ins. Co.*, 47 Mo. 425; *Bunce v. Beck*, 43 Mo. 266; *Cummings v. Arnold*, 3 Met. 486; *Moore v. Ins. Co.*, 16 Mo. 98; *Kennebec v. Ins. Co.*, 6 Gray, 204. (3) The open or running policy, as modified, was both an agreement and standing propo- sition from defendant to insure plaintiff, on the com- pliance by plaintiff with certain conditions, and the acceptance by plaintiff of defendant's proposition, to insure by compliance with the conditions, viz.: Mailing notice per said form of application completed the insur- ance of the shipments of property as made. *Taylor v. Merchant's F. Ins. Co.*, 9 How. 390. (4) All the law requires is due diligence to send the notice within the proper time and it is sufficient to put it properly directed in the post office in season. (5) E. Winsor & Son were defendant's agents having authority to take applications for insurance, and the acts of such agents were the acts of the company. *Combs v. Ins. Co.*, 43 Mo. 148. (6) One dealing with the agent of a corporation has a right to presume, in the absence of knowledge to the contrary, that such agent has general authority. *Schmot v. Ins. Co.*, 2 Mo. App. 339; *Insurance Co. v. Wilkerson*, 13 Wall. 222. (7) The case was fairly submitted to the jury on correct instructions authorized by the evidence, and as the evidence was conflicting, this court will not weigh it. The jury found for plaintiff, and the judgment, we submit, is for the right party. There was no error in the court below materially affecting the merits of the action; the errors, if any, were in favor of and not "against the appellant," and the judgment below should be affirmed.

NORTON, J.—This suit was instituted upon an open policy of insurance dated fourteenth of March, 1881, issued by defendant to recover for a loss of wheat, sheep

and wool lost by the sinking of the steamboat, "E. H. Durfee," in the Missouri river on the twenty-third of May, 1881. · It is alleged in the petition in substance, that by said policy defendant agreed to insure and thereby insured plaintiff, for any one whom it may concern, lost or not lost, on all shipments of property on board of good seaworthy steamboats in the United States, as endorsed by the authorized agent of defendant at Lexington, Missouri, on said policy or on a book therein, stated to be attached thereto and made part thereof, or for which certificates properly signed by an officer of defendant are issued by the authorized agent of defendant limiting liability of defendant on property to five thousand dollars on one voyage for any one shipper. It is also averred that plaintiff was engaged in buying and shipping wheat, sheep, wool and other commodities; that he transacted this business at Wellington on the Missouri river, which was eight miles distant from Lexington, where E. Winsor & Son, the authorized agents of defendant, lived and transacted the business of said company; that in consequence of the small number of steamboats, navigating the Missouri river, and of those navigating it having no regular days or time for arriving at or departing from the said town of Wellington, plaintiff's only chance for shipping property on steamboats was by having the same at his warehouse at the steamboat landing, and shipping the same on steamboats as they might stop at Wellington in navigating said river; that in view of these facts, and the impossibility of plaintiff's using and making available to himself and defendant said policy by a strict and literal adherence to the terms thereof, in regard to endorsements thereon, or on a book to be attached thereto by the authorized agents of defendant at Lexington, or the issuing and signing of certificates by an officer of defendant, the contract terms and conditions of said policy subsequent to the making and delivery thereof were by the mutual

assent, agreement, practice and acquiescence of plaintiff and defendant modified and changed to the extent that plaintiff was thereby permitted and allowed by defendant to make shipments of property under said policy on good seaworthy steamboats, and to give notice in a reasonable time of such shipments according to a form prescribed by defendants, to E. Winsor & Son, agents of defendant at Lexington, either through the mail between Wellington and Lexington in an envelope addressed and directed to said agents at Lexington, or by depositing the same enclosed and addressed to said agents, in the post office at Lexington. It is further alleged that under said open policy so modified and changed, plaintiff on the twenty-first of May, 1881, at the town of Wellington shipped on board the steamboat "E. H. Durfee," 1021 sacks of wheat of the value of $3,000, fifty-eight head of sheep of the value of three hundred dollars, and five sacks of wool of the value of two hundred and twenty-five dollars, of which shipment he gave defendant notice by depositing the same on twenty-second day of May, 1881, in the post office at Lexington, enclosed in one of the letter envelopes previously furnished to plaintiff by said Winsor & Son, and to be by him used when shipments were made. The property thus shipped, it is alleged, was lost on the twenty-third of May, 1881, by the sinking of said steamboat and this suit is brought to recover the loss, defendant after notice of loss refusing to pay.

The answer of defendant contained a general denial of all the allegations of the petition, except as to their being a corporation, and also sets up in substance that the shipment in question was not indorsed on the policy or on a book attached thereto, neither was there any certificate properly signed by any officer of defendant issued by the agent of defendant. It also states that plaintiff never applied to defendant for insurance on said shipment, and that defendant never accepted said

shipment as insured, either under the terms of said policy or upon any other terms. It further alleges in the answer that by the course of dealing between plaintiff and its agents at Lexington, the said plaintiff either mailed his application for insurance at Wellington or delivered it to the said agents, and that said agents on reception thereof, if accepted, endorsed the same on a book kept for that purpose; and that plaintiff's property only became insured upon such reception, acceptance and endorsement, or upon the issuance of a certificate as set forth in said policy.

It is clear under the terms of the policy, that before any property shipped by plaintiff became insured, that such shipment of the property was either to be endorsed by an agent of the defendant on the policy or on a book attached thereto, or for which certificates properly signed by an officer of the company and issued by the authorized agent of the company. And it is equally clear that the shipment made on the twenty-first of May, 1881, on board the steamboat "Durfee" was not endorsed either on the policy or on a book attached thereto, nor was any certificate issued as provided in the policy. But notwithstanding this it is claimed by plaintiff that after the delivery of said policy it was so modified by the agreement of plaintiff and defendant through their agents at Lexington, that when plaintiff made a shipment of property and gave notice thereof in a form furnished him by defendant, within a reasonable time, either by depositing said notice in an envelope directed to E. Winsor & Son, Lexington, Missouri, either in the post office at Wellington, or by delivering it in person to said agents, or by depositing the same in the post office at Lexington, that the property shipped should be insured from the time such notice was deposited either in the post office at Lexington or Wellington, or delivered in person to such agents. It is claimed on the other hand that the terms of the policy

could only be changed by an agreement endorsed on the policy. And that this is shown by the following provision contained in said policy, namely: "The use of general terms, or anything less than a distinct, specific agreement clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction herein contained." It is clear under the above clause of the policy that any agreement made between plaintiff and defendant to waive any of the terms or conditions of the policy would be invalid, unless such agreement was endorsed on the policy, and would undoubtedly, when an insurance had been completed according to the terms of the policy, and a loss had taken place, apply to such conditions as are contained therein with reference to notice of such loss and proof of same and the time within which such notice and proof should be given and made.

If it had been intended by the parties that the terms of the contract should not be modified or changed, unless the agreement modifying it was endorsed on the policy, the intention could have been expressed by making the said clause read "shall not be construed as a waiver," modification or change of its terms, etc. If the policy in question had so expressed the intention of the parties, then the class of cases to which we have been cited by appellant's counsel, of which the case of *Hale v. M. M. F. Ins. Co.*, 6 Gray, 169, is one, would apply, where it is held that when by the terms of a policy subsequent insurance could only be allowed by the written consent of president, verbal consent could not be shown. That the contract between plaintiff and defendant embodied in the open policy could be modified and changed by a subsequent parol agreement is established by the following authorities: 1 Greenl. Evid., secs. 303-4; *Henning v. Ins. Co.*, 47 Mo. 425; *Bunce, Adm'r, v. Beck*, 43 Mo. 266; *Kennebec Co. v. Augusta*

*Ins. Co.*, 6 Gray, 204–14; *Canal Co. v. Ray*, 101 U. S. 522.

The evidence of plaintiff himself and that of E. Winsor & Son, the agent of defendant at Lexington, tended to show that subsequent to the delivery of the policy, in consequence of the fact that Wellington was distant about eight miles from Lexington, and the further fact that the arrival and departure of steamboats at and from the landing at Wellington was uncertain and unfrequent, in order to make said policy mutually beneficial, it was agreed between them that when plaintiff made a shipment, instead of requiring the same to be endorsed on the policy, or on a book attached thereto, or the issuance of a certificate signed by an officer of the company, that plaintiff should notify E. Winsor & Son, the agents of defendant, thereof by enclosing a notice or application, the form of which was furnished by said agents to him, in an envelope directed to them at Lexington, envelopes for that purpose having also been furnished him by said agents, and either delivering the same in person to said agents or depositing it either in the post office at Wellington or Lexington ; that the rate of premium agreed upon (it not being fixed in the policy) should be three-fourths of one per cent. upon all shipments made, until notice should be given of a change and that such premium should be paid at the end of each month. That the shipment in question was made on the twenty-first of May, 1881, the steamboat "Durfee" with its cargo leaving Wellington early in the morning of that day; that plaintiff signed the form furnished him, as follows:

"H. M. Blossom & Co., ⎞
Gen'l Agents, St. Louis. ⎬ .
　Certificate No. —. ⎠
"To the Mechanics' and Traders' Insurance Co., of New
　York.

⎰ Received at office.
⎱

"Wellington, May 21, 1881.　Insurance is wanted under
　open policy, No. ——; Lewis H. Day, applicant.

Risk No. ——

| Name of vessel or route.<br>E. H. Durfee. | From<br>Wellington | To<br>St. Louis | Description of property<br>1021 sacks of wheat<br>58 head of sheep<br>5 sacks of wool | Am't.<br>$3,000<br>300<br>225 |
|---|---|---|---|---|

Rate premium, ————

"[Signed.]　　　　　　　　　Lewis H. Day."

That the notice or application was enclosed in one
of envelopes also furnished by said agents, with a printed
direction thereon, as follows :

"Messrs. E. Winsor & Son,
　　"Agents Mechanics' and Traders' Fire Ins. Co.,
　　　　　　　　　. "Lexington, Mo."

That on the evening of that day he went to the post
office for the purpose of depositing said notice therein,
to be mailed according to the direction thereon, and
learned from the postmistress that the mail for Lexing-
ton had gone, and the mail would not again leave until
the following Monday evening ; that upon learning these
facts, he placed the said letter and notice in the hands
of one Charles Bowing to be deposited the next morning
in the post office at Lexington ; that Bowing deposited
said letter and notice in the post office at Lexington on
the evening of the next day, it being Sunday and the
twenty-second day of May ; that on Monday, the twenty-
third day of May, the steamboat sunk, whereby all but
a few dollars worth of the property was totally lost ;
that the notice of shipment was not in fact received by
said Winsor & Son, and that they knew nothing of the

shipment and loss till informed of it by plaintiff on the day or next after the loss. The evidence also tended to show that Winsor & Son, upon the receipt of any notice of shipment endorsed the same on a book kept by them for that purpose; that the premiums, on the goods insured were to be paid by plaintiff at the end of each month; that numerous shipments had been made by plaintiff under the policy in question, both before and after the date of the loss, for the recovery of which this suit is brought, and also that numerous shipments had been made under a like policy issued to plaintiff in 1880, and the course of dealing between the parties on such shipments, as to notice, was the same as that pursued in the present instance, and the invariable practice was, on the reception of these notices by Winsor & Son, to endorse the goods as insured from the date of mailing the notice and not from the time it was received; that if the notice was mailed on the tenth and not received till the fifteenth of the month, it would be entered up as of the tenth, the date of the application.

On the above state of facts which the evidence tended to prove, defendant requested the court to instruct the jury that the plaintiff could not recover. The court refused to grant the request and gave instructions on behalf of the plaintiff in substance and to the effect, that if for the purpose of making the open policy in question useful and profitable to both parties, it was, subsequently to the making thereof, by the mutual assent, practice and acquiescence of both parties, that the terms of said policy should be modified and changed to the extent of permitting and allowing plaintiff to make shipments on seaworthy steamboats navigating the Missouri river, whenever he should be ready to make such shipments while such steamboats were stopping temporarily at the landing in Wellington, and should give notice of such shipments, through Winsor & Son, on and by a form furnished him by defendant for that

purpose, in a reasonable time, enclosed in envelopes directed to said agents at Lexington, and deposited in the post office either at Lexington or Wellington, then such modification of the contract authorized an insurance on property shipped by plaintiff on such steamboats, by his giving notice thereof according to the form furnished for that purpose and in the manner above specified, without such shipment being endorsed either on such policy, or on a book attached thereto, or without a certificate signed by an officer of the company and issued by its agents; and that if the jury further believed that the shipment in question was made on the twenty-first of May, 1881, on the steamboat "E. H. Durfee," and that it was seaworthy, and that plaintiff caused a notice of such shipment according to the form prescribed, by depositing the same in the post office at Lexington directed to said agents, Winsor & Son, on the twenty-second day of May, and that it was agreed that the premium of three-fourths of one per cent. should be paid by plaintiff, on shipments made during the month at the end of the month, and that the goods shipped were lost by sinking of the said steamboat in the Missouri river on the twenty-third of May, they should find for plaintiff the value of the goods so lost, deducting the unpaid premium.

The instructions given by the court come within the principle stated on page 317, 1 Parsons on Marine Insurance, where it is said: "An open policy is so called because an insurance is provided on goods to be afterwards specified and declared. Running or open policies are now common. Merchants engaged in a certain trade wish to keep all their merchandise constantly insured They effect this, not by a policy on every adventure, but by one policy sufficiently general in its terms to cover all the expected shipments; and then as the insured has notice of each he indorses it on the open policy. Sometimes the policy requires that each indorsement shall be

assented to by the insurers before the insurance attaches to it. In other policies the indorsement has this effect of itself. By indorsement of the policy is not meant that the insured may make his own indorsement, at his own time and pleasure, on the copy of the policy in his own hands, and then this endorsement necessarily and by its own force brings the property under insurance without a communication to the insurers. For the indorsement must be made on the copy of the policy in the hands of the insurers, or at all events a communication must be made to them. If, however, the terms of the policy give to the insured the right to specify and indorse certain shipments, and the insured in due time and manner specify and declare such a shipment and request of the insurers the indorsement thereof and the insurers refuse this without sufficient cause, they would be held as effectually as by an indorsement."

Under the terms of the original policy in this case, before an insurance of property shipped could be effected under it, an indorsement thereof by an authorized agent of defendant was required to be made either on the policy or a book attached thereto, or the issuance of a certificate by an agent and signed by an officer of the company. If, after the delivery of this policy, it was so modified and changed in these respects by the mutual consent and agreement of the parties, as only to make it necessary to. effect an insurance on plaintiff's goods or property when shipped, for him to give notice to defendant in the form of an application of such shipment, naming the vessel on which such shipment was made and its destination, when it was made, stating what property was shipped and its value, either by depositing the same in the post office at Wellington or Lexington, directed to Winsor & Son, defendant's agents at Lexington, and such application or notice was within a reasonable time so deposited, then the property so shipped was insured under said policy so modified from

the time such notice was thus deposited. *Taylor v. Merchants' Fire Ins. Co.*, 9 How. 398.

The authority of Winsor & Son as the agents of defendant at Lexington to make the modification in the contract referred to in the evidence may be inferred from the course of dealing with plaintiff and recognition of these acts by the company. *Combs v. Ins. Co.*, 43 Mo. 148; Ang. & Ames on Corp., sec. 284; *Kennebec Co. v. Augusta Ins. Co.*, 6 Gray, 204; *Northrup v. Ins. Co.*, 47 Mo. 435. The theory on which the court tried the case, as evidenced by its instructions, we think was the correct one, and, perceiving no error in the record, materially affecting the merits of the action, the judgment is affirmed. All concur.