DOWAGIAC MANUFACTURING COMPANY v. O. H. HELLEKSON.

Opinion filed July 5, 1904.

**Provisions of Written Contract May Be Waived by an Executed Parol Agreement.**

1. Where a contract provides that "settlements of accounts governed by it are to be consummated only by written approval of said party of the first part from its home office," the parties may make a valid settlement under such contract, although the settlement is not made or approved in writing.

**Same.**

2. Under a contract containing such provisions as to the approval of settlements in writing, a settlement made by an agent duly authorized to make a settlement under such a contract in a particular case—such settlement being duly executed—is binding upon the principal, and it will not be heard thereafter to repudiate such settlement, although not approved in writing.

**Retention of Money Received on a Settlement Ratifies Agent's Acts Therein.**

3. Where a principal retains money paid on a settlement, with knowledge of all the facts pertaining to such settlement, it is a ratification of such settlement, although made by an agent without authority to make final settlements.

**Court's Findings Set Aside Only When Clearly Against Evidence.**

4. Findings of facts made by a trial court in an action at law, a jury being waived, are presumed to be correct, and will not be set aside unless shown to be clearly against the preponderance of the evidence.

Appeal from District Court, Cass county; *Pollock, J.*

Action by the Dowagiac Manufacturing Company against O. H. Hellekson. Judgment for defendant, and plaintiff appeals.

Affirmed

*Newman, Spaulding & Stambaugh,* for appellant.

Where title to goods sold is reserved by the seller as security only, he can waive the security and sue for the purchase price. Appeal of Beach, 20 Atl. 475; Bessinger Co. v. Cain, 18 S. W. 136; Monroe v. Williams, 15 S. E. 279; Crompton v. Beach, 25 Atl. 446; Campbell Co. v. Rocaway, 29 Atl. 681; Truax v. Parvis, 32 Atl. 227; Earl v. Robinson, 33 N. Y. Supp. 606; Parlin Co. v.

Moline Co. 27 S. W. 1087; Singer Mfg. Co. v. Hatley, 21 Pac. 384; Burmley v. Tufts, 5 So. 627.

Whenever the parties to a contract have agreed upon the manner in which the rights under the contract shall rest, or be divested or effected, that method is exclusive. Hankins v. Rockford Ins. Co., 35 N. W. 34; Zimmerman v. Home Ins. Co., of New York, 42 N. W. 462; Smith v. Ins. Co., 15 Atl. 353; Marvin v. Ins. Co., 85 N. Y. 278; Kyte v. Commercial Union Assurance Co., 10 N. E. 518; Cleaver v. Traders' Ins. Co., 32 N. W. 660; Walsh v. Ins. Co., 73 N. Y. 5.

*F. W. Murphy* and *Charles A. Tuttle,* for respondent.

Where the seller retains title to goods sold to secure the purchase price, he must pursue his remedy under the code, and cannot without the consent of the purchaser treat it as an absolute sale and sue for the purchase price. Minneapolis Threshing Machine Co. v. McDonald, 87 N. W. 993; Stanford v. McGill, 6 N. D. 536, 72 N. W. 938, 38 L. R. A. 760.

If the principal elects to ratify any part of an unauthorized act, he must ratify the whole. He cannot retain what is advantageous to him and reject the rest; and the rule applies to an implied ratification as well as an express one. McClure v. Briggs, 58 Vt. 82; Eberts v. Selover, 44 Mich. 519; Henderson v. Cummings, 44 Ill. 325; Crans v. Hunter, 28 N. Y. 389; Reid et al. v. Hibbard, 6 Wis. 175; Cushman v. Lochre, 2 Mass. 106; Parish v. Reeves, 23 N. W. 568; Bacon v. Johnson, 22 N. W. 276; Mechem on Agency, section 148.

The principal must act promptly upon receiving information. Ward v. Williams, 26 Ill. 447, 79 Am. Dec. 385, 30 Am. Dec. 718; Foster v. Rockwell, 104 Mass. 167; Kelsey v. National Bank of Crawford, 69 Penn. St. 426.

Whether repudiation was had in time was a question for the court. McDermid v. Cotton, 70 Am. Dec. 298. Unless the principal dissents and gives notice of his nonconcurrence within a reasonable time, his assent and ratification will be presumed. Mobile & Montgomery Ry. Co. v. Jay, 65 Ala. 113; Kelsey v. National Bank, 69 Penn. St. 426; Searing v. Butler, 69 Ill. 575.

A clause in an agreement that no one has any authority to add to, abridge or change in any manner, does not invalidate a waiver of the provisions of an agreement by an agent of a corporation,

one of the parties. D. M. Osborn & Co. v. Backer, 47 N. W. 70; Hunter v. Cobe, 87 N. W. 612; Carrigan v. Lycoming Fire Insurance Co., 53 Vt. 418.

A general agent is deemed possessed of all the powers of an agent at the head office. Kerr on Ins. 183; Coles v. Jefferson Ins. Co., 23 S. E. 732; May on Insurance 126; Imperial Fire Ins. Co. v. Dunham, 117 Pa. St. 460; Dwelling House Ins. Co. v. Dowdall, 42 N. E. 606; Phenix Ins. Co. of Brooklyn v. Cadwell, 58 N. E. 314.

MORGAN, J. In the year 1901 plaintiff and defendant entered into a written contract under which defendant was to sell at Fairmount, N. D., and all territory tributary thereto, the grain-seeding machinery manufactured by plaintiff at Dowagiac, Mich., during the year 1902. The contract provided for a settlement of accounts on May 1st, as all sales for the year were deemed to have been made by that date. The contract also provided that, if payments were made for sales of that year by June 1st, certain discounts would be made by plaintiff. The contract also contained the following clause: "This agreement and settlements of accounts governed by it are to be consummated only by written approval of said party of first part from its home office at Dowagiac, Michigan, and upon this and all future shipments, no other contract and no agreement, consideration or stipulation, modifying or changing the tenor hereof, shall be recognized or binding, unless they are so approved."

The principal question at issue is upon the validity of a settlement made by a general agent of the company with the defendant. The facts under which such settlement was made are the following: On March 31st defendant sent to the general agent of the company a check for $283.77, with a letter accompanying the check. The letter is not in evidence, and its contents are not given. The general agent sent the check to the company at its home office, and on April 3d the company wrote defendant that the remittance was not enough, by $14.96, and explained wherein it did not represent the full amount due, as it construed the contract; and the letter further stated that the check would be held by it pending a reply to the letter. Defendant did not reply to the letter, nor was anything done or said by plaintiff in reference thereto until the following July, when the plaintiff requested one Swayne, plaintiff's general agent in this state, to go to Fairmount for the purpose of making a settlement with the defendant for all matters

arising out of the contract, including the dispute that had arisen as to the sum to be remitted, over and above the sum of $283.77, remitted on March 31st, if any. The general agent went to Fairmount, and, after going over the entire account, and all transactions connected with or growing out of the contract, arrived at a settlement. This settlement included in its terms the amount due the plaintiff on account of the goods furnished under the contract, and the disposition of the unsold goods that defendant had on hand, and payment for repairs. The agent took from defendant what is called in the record a "warehouse receipt," and sent it with a letter, and $14.96, the amount agreed on as due from the defendant, to the company, at Dowagiac, Mich. The receipt taken by plaintiff's agent at this time contained a list of the unsold goods, and provided that they should be safely kept and fully insured by defendant until February, when defendant would again purchase them under the same terms as stated in the 1901 contract. The agent transmitted the check and the receipt to the company at Dowagiac on or about July 12th. The company replied to said letter containing the check and receipt, by writing the defendant on August 5th, nearly four weeks after its receipt. In this reply plaintiff claimed that the settlement was not in accordance with the contract, and that, defendant not having settled for all matters pursuant to the terms of the contract, defendant owed the company in cash for all goods received, at list price. In other words, it charged defendant with all the goods sent him at list prices. Plaintiff returned the receipt, but kept both checks, but offered to accept defendant's secured note for the amount claimed to be due and unpaid. The defendant did not answer this letter, but wrote the general agent concerning it, and stated to him that he would not comply with the company's demands, but would stand on the settlement made with him as general agent. This suit was thereafter commenced, and judgment demanded for the whole amount of the goods delivered, at list prices; being the sum of $609.67, with interest thereon at 8 per cent since May, 1902, over and and above all payments made by defendant.

The answer denies that any sum is due plaintiff, as all matters in difference between the parties were duly settled and full payment made on July 12, 1902. The issue presented is whether the settlement of July 12th is a binding one. Plaintiff insists that no settlement could be made by the general agent unless followed by the

written approval of the company at its home office. Defendant insists (1) that the agent, Swayne, was general agent of the company, and had authority to settle with defendant under his general authority or powers; (2) that express authority was conferred on him by the plaintiff to settle with defendant, and (3) if such settlement was unauthorized, plaintiff has ratified it by retaining the money paid by virtue of and under the terms of said settlement. The arguments on behalf of the parties are mostly directed to the question as to whether there was a binding settlement under the contract, or not. The effect of the clause of the contract quoted is to restrict the right of agents to settle disputed matters growing out of these contracts. The agents have no right to make these settlements on their own responsibility. The agent cannot effectually make a settlement under this clause unless he has special authority so to do, or has general authority sufficiently broad to include settlements under this contract.

We do not agree with plaintiff's contention that such a clause in such a contract cannot be modified by subsequent acts, or ratified by subsequent acts or waived. This provision of the contract is not to be subjected to a different construction than any other of its terms. To say that this clause of the contract renders all settlements thereunder invalid, however made, unless evidenced by written approval of the home office, is to say that parties have no right ever to change what they have agreed to do, or their manner of doing it. If this is true, it gives to this contract a character that does not ordinarily belong to contracts. In Westchester Fire Ins. Co. v. Earle, 33 Mich. 143, the court said: "The powers of Atwater in the present case do not appear to be restricted in any way. The condition, literally applied, would prevent any unendorsed consent by the company itself, by resolution of the board, or by act of its officers, as effectually as by any one else. And the case seems to settle down to the simple question whether a person who has agreed that he will only contract by writing in a certain way precludes himself from making a parol bargain to change it. The answer is manifest. A written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement not to agree by parol than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it." When the contract prescribes

the manner in which it may be modified, waived, released, or approved, it is competent for the parties to modify it or release it or approve it in a different manner by a valid contract that is executed and an unauthorized change of a contract as to the manner in which a contract may be approved or released may be ratified in the same manner by the principal, having notice of all the facts. Coles v. Jefferson (W. Va.) 23 S. E. 732; D. M. Osborne Co. v. Backer (Iowa) 47 N. W. 70; Cyc., vol. 9, p. 599, and cases cited; Day v. Mechanics' Ins. Co., 88 Mo. 325, 57 Am. Rep. 416; McFadden v. O'Donnell, 18 Cal. 160; Erskine v. Johnson, 23 Neb. 261, 36 N. W. 510. The contract was one, therefore, that the parties might modify in the respect in which settlements might be made thereunder. It remains to determine whether there was a valid modification thereof by the parties under a valid authorization delegated to plaintiff's agent, either by general authority or by special authority given in respect to this settlement alone.

It is not denied that the agent and defendant made a settlement of some matters. That is was a final settlement of all matters arising under the contract is denied by plaintiff, and plaintiff also claims that the alleged settlement made by the agent was of no effect, because not approved in writing at the home office. The trial court made the following finding bearing on this question: "That thereafter a dispute arose between the parties with reference to a settlement between them of the transactions had under the terms of Exhibit A, above referred to, for the year 1902, whereupon, on or about the 12th day of July, 1902, at the request of the plaintiff, S. C. Swayne, its general agent, went to Fairmount for the purpose of making a settlement with the defendant for such transactions and for all matters under said contract, Exhibit A; and, after going over the entire account and all matters connected therewith, said Swayne received from the defendant, in full settlement of all' matters connected with said contract, Exhibit A, and the transactions aforesaid, a check for the sum of $14.96, balance of cash, which was to be in full for all drills and property sold in said year 1902 by the defendant for the plaintiff; and at the same time, and as a part of the same transactions, said Swayne took and received from the defendant a warehouse receipt * * * which covered all of said property * * * which had not been sold and remained in the possession of the defendant." Parts of this finding are excepted to, as not sus-

tained by the evidence, and the insufficiency of the evidence pointed out—that is, the part to the effect that a "dispute arose"—and the closing part, reciting the fact of and the terms of the settlement, are excepted to as not sustained by the evidence. But the part of the finding that finds that Swayne went to Fairmount at plaintiff's request for the purpose of making settlement of all matters under said contract is not excepted to, nor is there any specification in the settled statement that the evidence is insufficient to sustain such finding, and the part of the finding quoted, that Swayne was requested by plaintiff to go to Fairmount to settle all matters with the defendant, is nowhere challenged by a specification that such part of the finding is not sustained by sufficient evidence. This finding is not attacked in any way on the motion for a new trial in the settled statement, and it cannot now be urged that it is not sustained by the evidence. Other facts found are attacked as not sustained by sufficient evidence, and the contention that they are not sustained by the evidence overruled by us; but we hold that the question whether the finding of fact that Swayne went to Fairmount at plaintiff''s request to settle all matters is not before us for consideration, and that the motion for a new trial was properly denied. Section 5467, Rev. Codes 1899, provides that, if no specifications of the insufficiency of the evidence are contained in the settled statement, the settlement shall be disregarded on the motion for a new trial and on appeal. The record therefore presents as undisputed the facts that Swayne was the general agent of the plaintiff in North Dakota, and had charge of the plaintiff's business in this state generally. His duties are stated by himself as "solicitor of contracts, negotiator of settlements, and looking after the business generally for the Dowagiac Manufacturing Company in this territory." He further testified that, when he went into a town in which no settlement had been made with their agent, he settled with him, and that he had 180 settlements to make that year, and that the form of receipt given the defendant was the form "used in carrying over the drills from one year to another with every man who dealt with the Dowagiac Manufacturing Company in the state of North Dakota under that kind of contract." We need not pass upon the question raised in the case, whether Swayne had the power by virtue of the general authority conferred on him to bind the plaintiff by a settlement made by him without special authority given him in a particular

case. He was sent to Fairmount to settle with the defendant. He did settle with him. He was not sent there to negotiate a settlement. The whole matter was turned over to him to settle. A dispute as to the sum due on the 1902 business had arisen, and had been pending since about March 31st. Defendant had remitted the amount due in accordance with his understanding and construction of the contract. Plaintiff declined to accept defendant's construction of the contract, and had explained its position by letter, and demanded $14.96 more before that part of the business could be settled. Under the contract, settlements were to be made by May 1st. This time had passed, and defendant had made no settlement, except such as had been submitted in the letter of March 31st, and this had been rejected by plaintiff. Three months had passed without negotiations, and matters were at a standstill. This was the situation when plaintiff sent Swayne to settle with defendant. He was not sent there to submit propositions. Everything was left with him to settle. He did settle everything from the acceptance of the sums found due for repairs and for drills to the disposition of the goods on hand unsold. It is contended that, because defendant violated his contract, and sold other drills contrary to its terms, plaintiff is entitled to a recovery for all goods delivered to defendant, at list prices. This was one of the matters in issue and was talked over between Swayne and defendant at the settlement, and it was then settled and agreed that the unsold goods should be stored by defendant as plaintiff's property, fully insured as such, and repurchased in February, under specific terms in writing. Under the contract, this could be done by the plaintiff, and, having left the settlement of the matters to Swayne, he had the same right to do so as the company itself had. The company authorized Swayne to represent it at the settlement, and his action was final and beyond plaintiff's power to repudiate after the defendant had acted by settlement with him. As stated before, the company could modify the contract in respect to the manner of settlements. It could make one without written evidence thereof. The agent, Swayne, could do the same without plaintiff's written approval, as he had been previously commissioned with authority to settle with defendant. This clause of the contract that settlements must be approved in writing was waived by plaintiff by authorizing Swayne to settle with defendant. It is claimed that there was no modification of the contract; that a settlement was made, but was not evidenced as the

contract provided, and such settlement was made by authority expressly given, and its provisions carried out. Whether the contract was modified or not need not be determined, as it was performed and executed; and, if modified, therefore, it was permissible, under section 3936, Rev. Codes 1899, providing that written contracts may be altered by an executed oral agreement.

The finding that there was a dispute between the parties as to settlement of matters arising under the contract during 1902 is excepted to and challenged as not sustained by the evidence, and the particulars wherein the evidence is insufficient to sustain it pointed out. This is not an appeal under the provisions of section 5630, Rev. Codes 1899, but is an appeal from a judgment rendered by the court in an action at law in which trial by a jury was expressly waived, and findings of fact and conclusions of law duly made by the trial court, and a motion for a new trial made and denied. We are therefore properly asked to review the sufficiency of the evidence to sustain the findings thus excepted to. The findings themselves are presumed to be correct, and to be sustained by the preponderance of the evidence. The weight to be given findings of fact, when properly challenged on appeal, is clearly stated in Jasper v. Hazen, 4 N. D. 1, 58 N. W. 454, 23 L. R. A. 58, as follows: "Rather, it intended * * * that, when a finding of fact made by the trial court was brought into this court for review upon proper exceptions, it should come like a legal conclusion, with all the presumptions in favor of its correctness, and with the burden resting upon the party alleging error of demonstrating the existence of such error. He must be able to show this court that such finding is against the preponderance of the testimony, and, where the finding is based upon parol evidence, it will not be disturbed unless clearly and unquestionably opposed by the preponderance of the testimony." Fisher v. Trust Company, 21 Wis. 73; Randall v. Burk Tp., 4 S. D. 337, 57 N. W. 4. The evidence is conflicting as to whether the receipt was given and received unconditionally, or whether it was to be subject to the approval of the company. The agent, Swayne, says that it was not unconditionally accepted by him, but that it was to be submitted to the company for final acceptance. The defendant says that, when it was delivered, nothing was said about its being subject to approval by the company. The defendant says that every difference between them was satisfactorily adjusted. That disputes existed

is shown beyond all question. They related to the amount due, and the effect of having sold other drills in disposing of unsold goods. It is difficult to determine from a record of the testimony given which of two witnesses is truthful, in the absence of some fact or circumstance shown by the record that is of controlling weight. There is nothing in this record of such controlling nature. The trial court had the advantage of seeing the witnesses, and of observing them while testifying. After carefully considering all the evidence, we are not able to say that the finding is against the preponderance of the evidence. We have examined all the cases cited by plaintiff on this point, and find them inapplicable. If plaintiff had not requested Swayne to go and settle with the defendant, or no ratification had followed, the cases would be in point.

If the settlement be conceded to have been made without authority, the result would be the same, so far as this appeal is concerned. The retention of the money paid on the strength of the settlement had the effect of ratifying the unauthorized act. By keeping what was paid as part of the settlement, the settlement was recognized as binding. A person cannot ratify a settlement, so far as satisfactory, and repudiate the part objected to. The settlement must be dealt with, if unauthorized, in its entirety. It must be accepted as a whole, or entirely repudiated. It is not sufficient to say that defendant paid only what was legally due. That may be true, although not conceded. Still, defendant believed that he had paid what was due in March, and the claimed deficiency on the payment of March 31st was made up by paying $14.96 more, as part of the settlement. The agents made concessions, and defendant made concessions, resulting in this settlement of July 11th, under which all differences were adjusted, as stated by defendant in his testimony. In Strasser v. Conklin, 54 Wis. 102, 11 N. W. 254, it was said: "No rule of law is more firmly established than the rule that if one, with full knowledge of the facts, accepts the avails of an unauthorized treaty made in his behalf by another, he thereby ratifies such treaty, and is bound by its terms and stipulations as fully as he would be, had he negotiated it himself. Also a ratification of part of an unauthorized transaction of an agent is a confirmation of the whole. * * * If not authorized, the plaintiff, by receiving the money with full knowledge of the terms of settlement, ratified and confirmed what he did, and cannot now be heard to allege his agent's want of authority." See, also, Mechem on

Agency, section 148, and cases cited; Enc. Law, vol. 1, p. 1201, and cases cited; McClure v. Briggs, 58 Vt. 82, 2 Atl. 583, 56 Am. Rep. 557; Hinman v. Austin Mfg. Co. (Neb.) 90 N. W. 934; Eberts v. Selover, 44 Mich. 519, 7 N. W. 225, 38 Am. Rep. 278; Henderson v. Cummings, 44 Ill. 325; Crans v. Hunter, 28 N. Y. 389.

The judgment is affirmed. All concur.