(120 N. W. 545.)

M. ELLA ROBERTS v. C. B. LITTLE.

Opinion filed March 6, 1909.

Claim and Delivery — Evidence.

1. Action in claim and delivery to recover possession of certain stock. Judgment for defendant. Evidence examined, and *held* insufficient to justify the judgment.

Same.

2. Admission of Exhibits A, B, F and G offered in evidence by defendant *held* error.

Pleading Estoppel.

3. Whether estoppel in claim and delivery is required to be pleaded not decided.

Appeal from District Court, Logan county; *Burke,* J.

Action by M. Ella Roberts against C. B. Little.

Judgment for defendant, and plaintiff appeals.

Reversed.

*Charles H. Stanley,* for appellant.

To estop by silence, the person so estopped must know that others were relying or acting thereon. Vielle v. Judson, 82 N. Y. 32; Tarkington, v. Purvis, 9 L. R. A. 609, note; Reichort v. St. L. & S. F. R. Co., 5 L. R. A. 183.

To establish ratification it must appear that the person ratifying acted with full knowledge. Shevlin v. Shevlin, 105 N. W. 257.

Agent for managing business is not agent to mortgage property used in its management. Despatch Line v. Bellamy Mfg. Co., 12 N. H. 205.

Particularly as a surety for third party. Ruppe v. Edwards, 52 Mich. 411; New York Iron Mine v. Negaunee First National Bank, 39 Mich. 644; Doan v. Duncan, 18 Ill. 96; Gullick v. Grover, 33 N. J. L. 463.

Default is a prerequisite condition to foreclosure. Madison Natl. Bank v. Farmer, 5 Dak. 282, 40 N. W. 345; Game v. Whaley, 45 N. W. 228.

Where the owner of property permits another to deal with it as his own, by selling and mortgaging it, he cannot assert his interest against those acting upon his conduct and acquiescence. 16 Cyc. 764; Miller, et al, v. Ross, 65 N. W. 562; Sayre v. Thompson, 24 N. W. 383; Hubbard v. Tenbrook, 124 Pa. 291, 16 Atl. 817, 2 L. R. A. 823; Rogers v. Portland & B. Street Ry. Co., 100 Me. 86, 70 L. R. A. 574; Herman on Estoppel and Res Adjudicata, 914; Giffin v. Nichols, 51 Mich. 575; Anderson v. Hubble, 93 Ind. 570; Wrigley v. Watson, 83 N. W. 989; Christian v. Michigan Debenture Co., 96 N. W. 22.

CARMODY, J. This is an action in claim and delivery. The complaint is in the usual form, alleging that plaintiff is the owner and entitled to possession of 103 steers, and that the same are unlawfully detained by the defendant, that they were of the value of $2,000, to which complaint defendant interposed the following answer: "The defendant answers to the complaint, and denies: (1) That the plaintiff at the time stated in the complaint, or ever or at all, was in possession or entitled to the possession of the steers described in the complaint, or any of them. (2) Denies that said steers or any of them are or ever were the property of the plaintiff. (3) Denies that said steers are or were at the time alleged, or at any time since, of the value of two thousand ($2,000) dollars. Wherefore the defendant asks that the complaint of the plaintiff be dismissed, and that he be awarded a judgment against the plaintiff for his costs and disbursements herein." The case was tried by the district court of Logan county without a jury, a jury having been waived. "It was stipulated and admitted by both

parties in open court that prior to the commencement of this action the defendant took from Joseph Helmer's ranch in Kidder county, this state, 86 head of cattle branded 'YO' on the left ribs and now involved in this proceeding, and the 86 head so taken are the ones involved in this action, and were at that time and are now claimed by the plaintiff as her property, and prior to the commencement of this action she demanded the immediate delivery and possession of these cattle from the defendant, and such demand was refused; that at the time of the commencement of this action the plaintiff executed and delivered to the sheriff of this county, Logan, her undertaking in this action, and demanded that such sheriff take these cattle from the defendant; that such cattle were taken on her order and demand and that the defendant rebonded the same, and they have never been returned to the possssion of this plaintiff, and that said taking was without her consent."

It seems to be conclusively established by the evidence: That at the time of the commencement of this action, and for many years prior thereto, plaintiff and appellant owned and operated a cattle ranch in the county of Kidder, in this state, and lived thereon with her husband, Geo. S. Roberts. That for several years prior thereto one C. S. Budlong owned and operated a cattle ranch in the county of Logan, in this state. That in March, 1903, said Budlong owed this plaintiff over six hundred dollars for the care of his cattle, and that he purchased for her in South St. Paul, Minn., the cattle in controversy for about the sum of $1,169, and applied his indebtedness of $600 to plaintiff in making such purchase, that afterwards plaintiff paid the balance of the purchase price of $569 by borrowing the money from the Kidder County Bank, of Steele, giving a mortgage therefor on her real estate. That the plaintiff's cattle were not branded when she bought them, and that she had no stock mark of her own. That they were about the month of May, 1903, branded on the left ribs with Budlong's brand "YO." This brand on the Budlong cattle was upon the left hip. While plaintiff's husband, together with Budlong and two or three other men, were branding the cattle, plaintiff appeared and made objections. Her husband and Budlong told her they were doing it for convenience, as the cattle were going to herd together. The object of branding plaintiff's cattle on the ribs was so they could be distinguished from Budlong's cattle. That plaintiff's husband was her agent in taking care of her cattle and managing her cattle ranch.

That her cattle, as well as some of Budlong's cattle, were kept on her ranch part of the summer of 1903 and during the winter of 1903-4. That about the month of June 1904, her cattle, together with some of Budlong's cattle, were taken to Joseph Helmer's ranch in Kidder county, from which place they were taken by the defendant in October, 1904.

Over plaintiff's objection the court allowed defendant to show that on October 10, 1903, said C. S. Budlong delivered his promissory note for $10,204.43 to defendant, and secured the same by a chattel mortgage made by himself and wife, which was intended to cover all the cattle owned by said Budlong, and recited that said cattle were branded "YO" on either left side or hip; that such mortgage was foreclosed by order of defendant in October, 1904, and the cattle bid in for him. The court also allowed the defendant, over plaintiff's objection, to introduce in evidence Exhibits A, B, F, and G. Exhibit B, first in point of time, is an agreement between Budlong and plaintiff's husband, dated April 22, 1903, by which the latter, who claimed in that agreement, to be the owner of the cattle in controversy, agreed to assist Budlong in placing his brand "YO" on said cattle on left side between shoulder and hip, and also agreed that said Budlong could mortgage the said cattle; that the branding and mortgaging of said cattle was for accommodation only; and they were to be returned to said Roberts free and clear of all incumbrance not later than November 30, 1903. Exhibit A is a letter from Roberts to Budlong, dated October 10, 1903, by which Roberts, in substance, consents that Budlong may include these cattle in renewing the loan with the same understanding or terms of agreement as contained in Exhibit B. Exhibit F is the chattel mortgage hereinbefore mentioned given by Budlong and wife to defendant on the 10th day of October, 1903, which defendant claims covered the cattle in controversy. Exhibit G is an envelope in which was contained Exhibits A and B, indorsed as follows: "Deliver to C. S. Budlong, or Mrs. Budlong, or C. B. Little. Opened by N. C. Young." These rulings are each assigned as error, and will hereinafter be considered.

The findings of fact made by the trial court and which are now controverted are as follows, being the fifth, sixth, seventh, eighth, ninth and tenth:

"(5) That on the 10th day of October, 1903, C. S. Budlong executed his certain chattel mortgage to secure the payment of

a certain promissory note dated October 10, 1903, for the sum of $10,204.43, payable to the order of C. B. Little, defendant herein, which said chattel mortgage described with other property, the cattle involved herein, and constituted a valid and subsisting lien against the property involved in this action at the time of the execution thereof.

"(6) That at the time of the execution of said note and mortgage by the said C. S. Budlong he was in possession of and had good right and full authority to mortgage the said property involved in this action in the manner and form the same was so mortgaged, and did create thereby a valid and subsisting lien against said property for the payment of said debt. That the plaintiff was fully apprised of the execution of this mortgage and fully consented thereto.

"(7) That thereafter and on the 22nd day of October, 1904, the said chattel mortgage was duly foreclosed for non-payment of said indebtedness and said cattle involved in this action were duly sold to C. B. Little, the defendant herein, who thereby became the owner thereof.

"(8) That the value of said cattle at the time of the taking of the same and the foreclosure of said mortgage was $1,376.

"(9) That at the date of the commencement of this action the plaintiff had no right of possession of said property involved in this action, and has not now any right in or title to or ownership of any of the said property.

"(10) That the allegations of the plaintiff's complaint herein are not true, and the allegation of the defendant's answer herein of the ownership of all the cattle involved in this action, being 86 head of cattle branded 'YO' on the left ribs, is true."

Appellant's contention is that these findings of fact are not supported by the evidence. This contention must be sustained as to all the part of the fifth finding of fact, which reads as follows: "Which said chattel mortgage described with other property, the cattle involved herein, and constituted a valid and subsisting lien against the property involved in this action at the time of the execution thereof"—and as to all the sixth, seventh, ninth and tenth findings of fact, unless the appellant's husband as her agent had authority to execute Exhibits A and B, and to execute acommodation paper for her, or was the owner of said cattle, or unless she is estopped by her actions from maintaining this action or asserting

any claim against the respondent herein. The burden of proof is upon respondent to show that appellant's husband had authority from her to authorize Budlong to mortgage her cattle. An agent, as such, has no right to mortgage the property of his principal Despatch Line of Packets v. Bellamy Mfg. Co., 12 N. H. 205, 37 Am. Dec. 203, and even if he had he would have no right to bind his principal by indorsing or issuing accommodation paper Gulick v. Grover, 33 N. J. Law 463, 97 Am. Dec. 728. In this case the court says: "I take the rule to be well settled that the authority to sign accommodation paper, or as security for a third person, must be specially given, unless the authority of the agent is one of universal agency, and will not flow from any general authority to transact business for the principal. The making of accommodation paper, or the loan of one's name as security for another, does not fall within the ordinary business in which persons engage." "To validate such paper it must be shown that the agent was authorized to make use of his principal's name for that purpose, and his authority must either be express or implied from proof that he was accustomed, with the principal's consent, to use his name for the accommodation of others." North River Bank v. Aymar, 3 Hill (N. Y.) 262; Wallace v. Mobile Branch Bank, 1 Ala. 565. Even though an agent is authorized to draw and indorse notes, and to draw, indorse, and accept bills of exchange, he can act under such authority only to the extent of his principal's business, and is not authorized to draw, indorse, or accept them for the accommodation of mere strangers. Story on Agency, section 69; Odiorne v. Maxcy, 13 Mass. 178. We do not think it will be seriously claimed by respondent that appellant's husband was the owner of the cattle herein mentioned.

Respondent contends that the appellant herein, by her actions, during all the transactions recited in the record, waived her right to assert any claim to such stock, and is estopped by her conduct from maintaining this action. He claims that there is abundant evidence to show that appellant knew of the power to mortgage given by her husband April 22, 1903, and renewed October 10, 1903. We do not so read the evidence. Her testimony shows that she first learned, through her husband, in the latter part of October, 1903, that defendant claimed a mortgage on the property in controversy. She was also informed by her husband at the same time that he had loaned the cattle to Mr. Budlong. This evidence is

uncontradicted, and is corroborated by her husband. The objections by appellant to the introduction of Exhibits A, B, F, and G in evidence should have been sustained. There is no showing that appellant was connected with these exhibits in any way or knew of the existence of Exhibits A, B or G, until the trial of this action. She knew, in a general way, of the existence of Exhibit F, but it was not binding on her, and was not evidence that Budlong owned the cattle in controversy or had any right to mortgage them. Musser v. King, 40 Neb. 892, 59 N. W. 744, 42 Am. St. Rep. 700. In that case the court says: "The law, in the absence of all evidence on the subject, will not indulge in the presumption that one who made a mortgage on chattels was either the owner of or in possession of such property at the time he made such mortgage when the holder of such mortgage seeks to recover possession by replevin of such property from a third party." In the case at bar, appellant, who was owner of the cattle, was seeking to recover possession from the mortgagee and the same rule will apply.

The burden of proving an estoppel is on him who asserts it, and the evidence in this case falls far short of proving an estoppel on the part of the appellant. Appellant contends that respondent is not in position to avail himself of an estoppel on her part for the reason that he has not pleaded the same. While there is much force in this contention, it is not necessary to a decision of this case to pass on that question. There are other errors complained of by the appellant in the ruling of the court in admitting evidence, but in our view of the case it is unnecessary to pass upon them at the present time.

The order and judgment appealed from are reversed.

ELLSWORTH, J., concurs.

SPALDING, J., (concurring). The disregard in the trial of this case of the rules of pleading and of evidence has created great confusion in the record, and made it extremely difficult for me, at least, to arrive at a determination of the questions submitted. The complaint is in the usual form for actions for claim and delivery. The answer simply denies possession, or right to possession, or ownership, at any time in plaintiff. The evidence submitted by the defense was directed toward proving the estoppel of plaintiff to assert ownership as against the defendant. No proper objections were made to the admission of considerable evidence intended to

show estoppel, and it may be questioned whether the defendant after striking out incompetent and irrelevant testimony properly objected to establish estoppel. The burden of proof was on the defendant to establish such defense. Certain facts appear to be pretty clearly established by the evidence, among others that Mrs. Roberts owned the cattle in question in her own right, and it is not shown that she authorized the mortgage to Little, or knew that her husband had given permission to Budlong "to use them," until some time after the mortgage was given. Neither is it clear that she knew to whom they were mortgaged until after possession was taken for foreclosure.

The findings were drawn on the theory of the pleadings disregarding the theory on which the defense was in fact made, and some are in direct conflict. Many of the "findings of fact" are mere conclusions of law, and several material findings are wholly unsupported by evidence. When the unsupported findings are eliminated, those which remain do not warrant the judgment; and for this reason I concur in holding that a new trial should be granted.

Morgan, C. J. (dissenting.)  I think the judgment should be affirmed. The evidence, although not entirely satisfactory, warrants the finding of the lower court that the plaintiff authorized the giving of the mortgage. This is particularly a case where this court should give great weight to the findings of the trial court, and they should not be disturbed unless shown to be clearly and unquestionably against the preponderance of the evidence. Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717; Jasper v. Hazen, 4 N. D. 1, 58 N. W. 454, 23 L. R. A. 58. The plaintiff's husband was her agent in all business matters. She knew that the possession of the stock was in her husband. She did not object to the branding of the cattle with what was practically the Budlong brand. She made no objection when informed that the husband had loaned the cattle to Budlong "to help him out," and never repudiated the mortgage until the trial. From the evidence it is difficult to see how she could have been ignorant of the giving of the mortgage when all these matters are taken into consideration, together with the intimate relations existing between husband and wife. If she was ignorant of the mortgage, I think she should be estopped by her actions from asserting that fact now. The fact of not pleading an estoppel is immaterial in this case

as there is not a sufficient objection to the evidence or to the answer on that ground, and its alleged insufficiency is first raised in this court.

Fisk, J. I concur in the views of the Chief Justice.